Jackson Police Department                                    Page: 1
NARRATIVE FOR CHIEF CHRIS PERLEY
Ref: 2515-29-OF
Entered:  05/11/2025 @ 1355     Entry ID: JPDCP
Modified: 05/12/2025 @ 1403     Modified ID: JPDCP
Approved: 05/12/2025 @ 1311     Approval ID: JPDCP

On 05/11/2025, I began assembling and organizing calls for service associated with Black Mountain Ski Area. This accounting of activities is to be forwarded to the NH Liquor Commission, Enforcement Division, as well as the BOS, for consideration as it applies to Liquor licensing and permitting. (see, Liq 207.01 Petition for Revocation).

My name is Christopher C. Perley. I am the Chief of Police in Jackson NH. I was appointed asa such on December 22nd, 2016 and have served in that capacity since. I have been police officer in New Hampshire, nearly continuously, since 1985. I have extensive training and experience in law enforcement en devours to include the management of large scale events and activates in an around ski communities.

Beginning in the Winter of 2025, Black Mountain Ski Area underwent new management. The previous owner/operator John Fichera, transferred management of the mountain operations to

Erik Mogensen

Early in 2025, with the advent of winter, parking in and around Black Mountain Ski area became a challenge. This was not a problem I ever had to attend to in the 8 previous years as Chief of Police. Jackson has a winter parking ban in effect from November through April of the following year to help facilitate snow removal. In addition, the parking ordinance designates lawful parking at specific places and roadways. Black Mountain Road, Dundee Road and Moody Farm Road are not included in these permitted areas for roadside parking.

Around mid January, 6 parking tickets were issued to patrons of Black Mountain for on street parking in and around the area. These vehicles were in the travel portion of the road due to snowbanks, and not in a permitted area. Subsequent to the issuing of the parking tickets, Erik Mogensen met and spoke with the Jackson Select board and myself regarding the tickets.

Speaking to him personally and in a Select Board meeting, I advised him that vehicles can't park in the travel lane as it is a safety hazard, and the area is not approved for street-side parking. Mogensen spoke about a plan to pay the parking tickets for the patrons and asked for their information. I told him I could not give him that information as it was protected under the Driver Privacy Act. Further I said that I felt it was a very bad idea as it would only encourage illegal parking by his customers if it was widely known. He was undeterred. Later Mogensen posted a social media announcement on facebook, announcing his intentions to pay the tickets and characterized it as a penalty for choosing to ski or snowboard at Black Mountain. Black Mountain did in fact pay 4 of the 6 tickets issued.

From that meeting we did develop a response plan to mitigate parking problems. I said that when we encountered parking violations we would contact the Mountain, and provide them information, so that they could make announcements to skiers that car would get ticketed and possibly towed.

Later, on April 1st he published a second facebook message, most likely in jest as it was April Fool's Day, telling people that Black Mountain was establishing a program to pay parking tickets. He juxtaposed the money used to pay parking tickets against the sale of Champagne at the Alpine Cabin. Although clear that it is an April Fool's post, it does reinforce, without contradiction, that illegal parking will be paid for by the Mountain. Ironically, the Mountain did exactly that in May when additional parking summonses were issued.

311

Jackson Police Department　　　　　　　　　Page: 2
NARRATIVE FOR CHIEF CHRIS PERLEY
Ref: 2515-29-OF

Entered: 05/11/2025 @ 1355　　Entry ID: JPDCP
Modified: 05/12/2025 @ 1403　　Modified ID: JPDCP
Approved: 05/12/2025 @ 1311　　Approval ID: JPDCP

On March 22nd, 2025 at 1648 hrs., I received a facebook message from a Bartender at Black Mountain, Laurie Beck, about an intoxicated driver. The message read, "Silver or white 4 door pickup. Both are intoxicated. Wil get gmc nh tags going to leaveblack parking lot in like5 mins. ▮▮▮▮▮ white gmc 4 door. going out shovel handle driveway." No contact was made with the driver, I was not on duty at the time. It is unclear if the person(s) were patrons, served or showed up intoxicated.

On April 20th, a fatal skiing accident occurred at Black Mountain Ski area. The victim was identified as Eric Page from Bartlett NH. Follow up investigation by Sgt. Mosher, and based on eye witness accounts, indicates that Page was intoxicated while skiing at Black. Page had contact with Black Mountain employees at the point of sale for his ticket, the lift line loading and off loading station, and was decribed as being noticably intoxicated and within site and sound of Ski Patrol personnel. Toxicology and death cerificate pending from the Medical Examiner's Office.

May 1st, Face book post by Erik Mogensen; describes the upcoming May 3rd, final ski day as "The parties Rowdy"

May 2nd, *Powder Magazine* publishes a piece describing the final day of operations at Black Mountain as, "Rowdy" Party Planned to Cap New Hampshire Ski Area's 90th Season." Mogensen is quoted within as saying it will be "the biggest party this place has ever seen" and the parties will be "rowdy."

On 05/03/2025, the last day of mountain operations we received several calls for service at and around Black Mountain Ski Area. They were as follows;

1131hrs CFS# 25-24280. The homeowner at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ reported that several cars were parked on her lawn. Myself and Sgt. Mosher discovered 10 illegally parked cars either in place, or in the process of parking. Driver occupied vehicles were asked to leave and others were tickets. While Sgt. Mosher was attending to that I called Erik Mogensen to explain what was going on and asked him to announce the parking violations. I also informed him that drivers were telling us that his staff were directing them to the location. He denied that, and said his staff was not doing it. I asked him to check in with his staff to clarify that issue. At no point did I request Mogensen to come to the area, as he suggested in published public comments about the event. There would have been no point in having him do so as Sgt. Mosher and I were handling the illegal parking and traffic issues. I only requested him to simply contact his staff and rectify any issues about their parking guidance.

Out of 7 tickets vehicles, all drivers said they had been directed to park in the area by Black Mountain Parking Attendants. One vehicle had to be towed, and the owner claimed the same thing about being directed to park where they were found. To date, 4 of the issued tickets were paid for with checks issued by Black Mountain Ski Area. Many of the drivers mentioned the policy of Black Mountain paying parking tickets with comments like, 'The mountain is just going to pay it anyways."

```
                    Jackson Police Department
                    NARRATIVE FOR CHIEF CHRIS PERLEY
            Ref: 2515-29-OF

    Entered:  05/11/2025 @ 1355      Entry ID:    JPDCP
    Modified: 05/12/2025 @ 1403      Modified ID: JPDCP
    Approved: 05/12/2025 @ 1311      Approval ID: JPDCP
```

1135hrs  Sgt. Mosher observed a private citizen attempting to enter Black Mountain Road on an OHRV from a Black Mountain parking lot. When questioned, the operator said he was shuttling skiers from his residence to the Mountain's northern parking lot by way of the OHRV. The operator was stopped in the parking lot prior to entering the roadway and ordered to leave the vehicle there. Warned for OHRV operation on the roadway.

1200 noon CFS# 25-24292  Sgt. Mosher and I observed a second OHRV traveling northbound on Black Mountain Road. The operator drove northbound approximately 150-200 yards in heavy traffic. As he was doing this both Sgt. Mosher and I were a little dumb struck by the conduct and I mentioned that I needed to call Mogensen to alert him to what his staff was doing. As I reached for my phone, Sgt. Mosher said I didn't have to call him since he was driving. As I looked at where the OHRV was now parked, I saw Erik Mogensen get out of the drivers seat. He approached us and I immediately asked him if the unit was registered for street use. He said "Nope" in a somewhat flippant manner. I informed him that it was a law violation to do so and he replied, "Well, I guess you've just going to have to give me a ticket." Taken aback by his attitude, I was thinking that he might think it's a town rule versus a State Law. I clarified with him that it was an actual State Law that he could not do that. He simply repeated his first comment and therefore, I issued him a citation. While issuing the citation he was very aggressive and his behavior somewhat threatening. He kept saying things like, "you better get it right Chief, better get it right" as I was filing out the ticket. He also said he was, "coming for me" and "this one is going right to the lawyers." After the interaction he asked if he could move the OHRV back to the service garage area. I said he would need to be escorted back by Sgt. Mosher as the traffic was very heavy and it was not registered (where it was parked would have created a traffic hazard in the north lot when vehicle left the area). Mogensen simply walked back to the OHRV, didn't wait for Sgt. Mosher and drove back down the roadway.

1934hrs  CFS 25-24335. This was a report of an intoxicated patron/driver from Black Mountain. A female caller reported to Carroll County dispatch that a male in a blue Toyota Tacoma had been drinking all day in the parking lot, ingested hallucinogenic mushrooms and had driven away toward Bartlett NH (southbound). The driver left the scene before JPD units could respond. A BOLO was sent out to area officers.

1942hrs CFS 25-4336. This call came in from Mogensen himself. He claimed to have hear shots fired from the area of the Davis Farm. The matter was investigated with inconclusive findings.

1954hrs  CFS 25-24337  This call was of a disturbance/drunken patrons type inside Black Mountain Lodge and the parking lot. Jackson Officers investigated and encountered intoxicated persons both inside the service area and in the parking lot.

   Following up on these matters I asked Kevin Bennett, Town Building Inspector and Health Inspector, to provide me with a statement regarding his observations on May 3rd. The e-mail he sent is enclosed with this packet. His observations included; Public and open urination at the mid station licensing and service area, no bathroom facilities for patrons, over-crowding in the service area, use of illegal drugs in the service area, Children present in the service area while illegal drug use was occuring, and intoxicated patrons in the service areas of Black Mountain.

```
                Jackson Police Department
                NARRATIVE FOR CHIEF CHRIS PERLEY
           Ref: 2515-29-OF

    Entered:  05/11/2025 @ 1355      Entry ID:    JPDCP
    Modified: 05/12/2025 @ 1403      Modified ID: JPDCP
    Approved: 05/12/2025 @ 1311      Approval ID: JPDCP
```

May 7th, *Conway Daily Sun* publishes and article regarding the May 3rd conflicts. Within the article, Mogensen alleges that the liquor inspector was on scene that day and they had "no issues." An e-mail I received from Lt. Ben Williams of Liquor Enforcement shows no duty personnel from the bureau where at the event.

Mogensen also added comments that in preparation for the event, he had met with myself two weeks prior to plan for the event. The last meeting I had with Erik Mogensen was on April 17th, at Black Mountain, with regards to the "Motor Booty Affair" event he was sponsoring that weekend. This was around 11:05am based on my phone call log. We met briefly at Black Mountain to look at the Stage and extended service area and went over the noise ordinance regulations. At no point did we speak about the upcoming May 3rd event. This was the last contact I had with Mogensen until the events described within on May 3rd.

This report, and the associated materials, are being forwarded to the NH Liquor Commission, Enforcement Division and the Select board for consideration as it relates to licensing and liquor law violations. Nothing further at this time.

314