

# New Hampshire Liquor Commission
# Division of Enforcement & Licensing

# INCIDENT REPORT

Incident #: 25-436-OF
Call #: 25-4703-CFS  25-5315-CFS  25-6806-CFS

Date/Time Reported: 05/08/2025 at 09:02
Incident Status: Suspended
Incident Type: Liquor Law Violation

Reporting Officer: Investigator Dumas
Assisting Officers: Sergeant Cutting

| OFFENSE(S) | TYPE |
|---|---|

Location: BLACK MOUNTAIN SKI AREA
RT 16B
JACKSON, NH

License Number: 1045103

*RSA Name/Statute:* 179:5 Prohibited Sales - INTOX N 90G
*Occurred Date/Time:* 05/03/2025 13:00
*Disposition:* Suspended

Location: BLACK MOUNTAIN SKI AREA
RT 16B
JACKSON, NH

License Number: 1045103

*RSA Name/Statute:* 179:50 Unlawful Purpose N 90G
*Occurred Date/Time:* 05/03/2025 13:00
*Disposition:* Suspended

Location: BLACK MOUNTAIN SKI AREA
RT 16B
JACKSON, NH

License Number: 1045103

*RSA Name/Statute:* 179:27 Restrictions on Serving and Congregating of Patrons N 90G
*Occurred Date/Time:* 05/03/2025 12:00
*Disposition:* Verbal Counseling

 

# New Hampshire Liquor Commission
## Division of Enforcement & Licensing

Location: BLACK MOUNTAIN SKI AREA
RT 16B
JACKSON, NH

License Number: 1045103

*RSA Name/Statute:* 179:44 Free Drinks N 90G
*Occurred Date/Time:* 05/03/2025 12:00
*Disposition:* Suspended

| PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE NUMBER |
|---|---|---|---|---|---|---|
| **Lahood, Alex** 292 Switchback Way Jackson, NH | Person in Charge | Male | ▓ | ▓ | | Home: Mobile: ▓ |
| **Dahill, Maura** | Person in Charge | Female | ▓ | ▓ | | Home: ▓ |
| **Meier, Christopher** | Other | Male | ▓ | -- | | Home: Mobile: |
| **PERLEY, CHRIS** 54 MAIN ST JACKSON, NH | Police Officer | Male | ▓ | -- | ▓ | Home: ▓ Mobile: |




# New Hampshire Liquor Commission
# Division of Enforcement & Licensing

| | | | | | | |
|---|---|---|---|---|---|---|
| **Mogensen, Erik** | *Licensee/ Owner* | *Male* | *W* | -- | | Home: |
| | | | | | | Mobile: |

| PROPERTY | | PROPERTY NUMBER | |
|---|---|---|---|

| ATTACHMENT | DESCRIPTION | UPLOADED BY |
|---|---|---|
| 25-3397-AT | Request to audit Black Mountain Email | N. Cutting |
| 25-3398-AT | Email from Jackson Police Chief with reported documents | N. Cutting |
| 25-3399-AT | JPD Chief email with reported documents to Lt. Williams | N. Cutting |
| 25-3400-AT | Lt Williams email to Chief Perley 5/12/25 | N. Cutting |
| 25-3401-AT | FW_ Black's 90th celebrated by everyone but police | N. Cutting |
| 25-3402-AT | Email from Chief Perley to Inv. Dumas regarding investigators being present May 3rd. | N. Cutting |
| 25-3403-AT | Chief Perley emailed report of marijuana use at mid station pub | N. Cutting |
| 25-3404-AT | Kevin Bennett (Health Officer) reporting no bathrooms, self pours, and deceased skiier found with nips | N. Cutting |
| 25-3405-AT | RE  After Action Summary_ Black Mountain Ski Area | N. Cutting |
| 25-3406-AT | Audit Request | N. Cutting |
| 25-3451-AT | | N. Cutting |

*PAGE # 3*                                                                  INCIDENT # 25-436-OF




# New Hampshire Liquor Commission
## Division of Enforcement & Licensing

|  |  |  |
|---|---|---|
|  | Fw_ Final COD on Eric Page (TOX) |  |
| 25-3573-AT | Black Mtn Audit | N. Cutting |
| 25-3600-AT | Text Message/photos from Chief | N. Cutting |
| 25-3778-AT | FW_ Petition regarding Black Mtn Ski Area noise   licensed establishment | N. Cutting |
| 25-3861-AT | 6/17/25 Text/photos from JPD Chief | N. Cutting |
| 25-4303-AT | Fw_ Anonymous Concern Sanitation and Compliance at Alpine Cabin_ Black Mountain | N. Cutting |
| 25-4526-AT | Champagne located on site on 7/15/25 | N. Cutting |

 

New Hampshire Liquor Commission
Division of Enforcement & Licensing

# INCIDENT # 25-436-OF

**NARRATIVE TITLE: Initial**

**OFFICER NAME: N. Dumas**

On 05/03/2025 I was made aware of a complaint filed to the Division by Jackson Police Chief:

**Christopher Perley**

regarding the licensed establishment:

**Black Mountain Ski Area**

**#6030605**

**373 Black Mountain Road**

**Jackon, NH**

I was notified of this complaint through several emails from both Lt. Benjamin Williams at the Division as well as through emails from Chief Perley which I was cc'd to. These emails have been attached to this report.

The original complaint was filed through an after action report by the Chief regarding an event on 05/03/2025 at the ski resort. The report reflected 6 Calls For Service at the mountain over a 9 hour period. These called included:

1. Parking complaint where Black Mountain customers parked on the lawn of a nearby property owner which JPD reported to an owner of the mountain identified as:

**Eric Mogensen**




# New Hampshire Liquor Commission
## Division of Enforcement & Licensing

Officer's observed a privately owned UTV on the roadway near Black Mountain shuttling skiers from a local residence to Black Mountain.

2. Eric drove an unregistered UTV to the parking complaint after being contacted my JPD and was issued a citation for driving an unregistered UTV.

3. The Jackson Building Inspector:

### Kevin Bennett

contacted Chief Perley to report a large crowd at the Mid Station bar, intoxicated patrons, an emergency fire lane being blocked, and public urination. Chief Perley told Kevin to report the blocked fire lane to the fire chief. The report didn't indicate any police response to the mid station bar for the issues.

4. Anonymous caller reported a male had been drinking in the Black Mountain parking lot all day, consumed hallucinogenic mushrooms, and had drove away impaired. This driver wasn't located and a BOLO was issued.

5. Report of shots fired by Eric by the neighboring cattle farm owners. JPD and the local Sheriff's office responded and were unable to determine if a firearm was discharged on the adjacent property.

6. At least 4 Black Mountain employees had reported that intoxicated patrons were causing a disturbance at the base lodge and were intoxicated. Two JPD Officers responded and located at least 3 patrons who appeared visibly intoxicated in the bar area. They didn't report if the patrons were holding beverages and didn't identify who any of them were. The patrons were removed from the building and released into the parking lot.

  

New Hampshire Liquor Commission
Division of Enforcement & Licensing

# INCIDENT # 25-436-OF

**NARRATIVE TITLE: Phone Call with Chief Perley**

**OFFICER NAME: N. Dumas**

On 05/06/2025 I contacted Jackson Police Chief:

**Christopher Perley**

regarding his recent report to the Division regarding:

**Black Mountain Ski Area**
**#6030605**
**373 Black Mountain Road**
**Jackon, NH**

We spoke on the phone for approximately 45 minutes during which time he shared that the event was large and his Department wasn't prepared for the event. He expressed frustration that the employees never contacted the PD of ticket sales or the amount of people they were expecting. He shared his conversation with the Building Inspector who had concerns of public urination near the Mid Station bar as well as a blocked fire lane. I informed him to provide my contact info to any witnesses and have them contact me directly. Chief Perley explained that he sent all of the Calls For Service in his after action report knowing that the OHRV violations, blocked fire lane, parking complaints, and possible shots fired off premise weren't an issue directly for the Division. He wanted to show how much time they had to spend at and around the mountain. He also mentioned that he had heard that people were smoking marijuana near the Mid Station Bar. I informed him that I was going to look into his report and asked him specifics regarding documentation of interactions with intoxicated patrons. I explained the observed signs of intoxication were important for me to know as well as who the individuals were. He stated that none of the intoxicated patrons were ever identified and his officers only escorted them out of the building. They never completed a custodial release and simply stated they were to "sober up in the parking lot". I asked why they didn't identify any of the individuals or witnesses and he said it was busy in the bar. I informed Chief Perley




# New Hampshire Liquor Commission
## Division of Enforcement & Licensing

that without knowing who any of the individuals were I couldn't effectively review receipts or question the individuals and he said he understood.

I told him I would check if the mountain had video footage in the bar and asked if any of his Officers were wearing body worn cameras during the interactions. He stated they didn't have BWC's. I informed him to contact me if any new information came up and explained how our progressive discipline model worked. I told him that we used the model for all violations excluding 179:5. He acknowledged that with the information provided I didn't have many facts to work with but that he wanted this to be a reason to keep a better look on the licensee the following years. He thanked me for talking with him and we ended the call.




New Hampshire Liquor Commission
Division of Enforcement & Licensing

INCIDENT # 25-436-OF

**NARRATIVE TITLE: Phone Call with Alex Lahood**

**OFFICER NAME: N. Dumas**

On 05/08/2025 I spoke with:

**Alex Lahood**



over the phone regarding the complaint I received about:

**Black Mountain Ski Area**
**#6030605**
**373 Black Mountain Road**
**Jackson, NH**

I had Alex's contact information as we had spoken on prior occasions regarding the mountain and I knew him to be a Beverage Manager. I explained to Alex that we received a complaint regarding Black Mountain which included possible over service at both the Mid Station Bar and the Base Lodge. I asked him what his role was on 05/03 and he explained he was a roaming manager and made contact with bartenders at both bars throughout the day. I asked if Alex could send me the names and phone numbers of the bartenders working that evening and he agreed. I told him that the complaint also included public urination near the Mid Station Bar and marijuana usage. Alex told me that while at the Mid Station Bar he did occasionally smell marijuana. He constantly scanned the crowd and suspected people were smoking on the chair lift as he didn't locate anyone smoking in that area and the chairlift traveled right past the bar. If he did locate anyone smoking, they would have been removed from the property. We then began discussing the public urination, he agreed with me that having people urinate on the mountain with the amount of children and patrons would be bad and that he heard it had occurred. He didn't find anyone urinating that day. I asked him about the bathroom situation and he informed me that a bathroom was equipped near the station but that there was a water issue so in wasn't available that day.




# New Hampshire Liquor Commission
# Division of Enforcement & Licensing

I told him that I was informed of multiple intoxicated patrons at the establishment and that in one instance the Jackson PD had to remove a patron. He stated that he encountered intoxicated individuals during his shift and had them removed from the area but that most of them were sneaking alcohol or showed up intoxicated. I asked him why the PD was contacted and he explained that he removed a male patron from the bar who was bringing his own alcohol that was clearly intoxicated. That same male reentered the bar and became disrespectful with his bartender. The intoxicated patron refused to leave so they contacted the PD for assistance. He stated nobody recognized the man and that he was never served alcohol at the mountain throughout the entire day. I asked Alex if he was confident in his bar staff serving responsibly and their experience. He explained that although it was a busy event he had sufficient staffing and trusted all of his bartenders as they had previous experience. I informed him that we would likely meet down the road to discuss my investigation.




New Hampshire Liquor Commission
Division of Enforcement & Licensing

INCIDENT # 25-436-OF

**NARRATIVE TITLE: Phone call with Maura**

**OFFICER NAME: N. Dumas**

On 07/02/2025 I contacted:

**Maura Dahill**



regarding an investigation at:

**Black Mountain Ski Area**
**#6030605**
**373 Black Mountain Road**
**Jackson, NH**

I knew Maura to be the Food and Beverage Director of Black Mountain and we spoke over the phone. I called her as I couldn't get in contact with manager:

**Alex Lahood**



She stated that Alex was off for several days but was happy to pass on any messages for me. I informed her that I was looking to schedule an interview with all ownership and Cooper, Cargill and Chant if they were still hired to represent the establishment. She stated she would pass on the message and we ended the call.

 

New Hampshire Liquor Commission
Division of Enforcement & Licensing

 

# New Hampshire Liquor Commission
## Division of Enforcement & Licensing

## INCIDENT # 25-436-OF

**NARRATIVE TITLE: Scheduled meeting with Bar Staff and Chris Meier**

**OFFICER NAME: N. Dumas**

On 07/08/2025 I spoke with an attorney at Cooper, Cargill and Chant who was representing:

**Black Mountain Ski Area**
**#6030605**
**373 Black Mountain Road**
**Jackson, NH**

regarding this investigation. I knew the attorney to be:

**Christopher Meier**

I informed Chris that I was looking to schedule a meeting with ownership and the bar manager regarding steps moving forward to conclude my investigation. I informed Chris that I wanted to have a simple conversation with them and come up with plans moving forward for them to stay in compliance with all liquor laws. Chris stated he understood and we agreed to all meet on 07/15/2025 at 0900 hours.




New Hampshire Liquor Commission
Division of Enforcement & Licensing

## INCIDENT # 25-436-OF

**NARRATIVE TITLE: Meeting with management and attorney at Black Mountain**

**OFFICER NAME: N. Dumas**

On 7/15/2025 at 0900 hours I met with several individuals from the licensed establishment known as:

**Black Mountain Ski Area**
**#6030605**
**373 Black Mountain Road**
**Jackson, NH**

in the lodge. I knew these individuals to be:

**Alex Lahood**
Manager

**Eric Mogensen**
Owner

and:

**Christopher Meier**
Attorney

This was a planned meeting which took place on the second floor of the lodge. Sgt. Nicolas Cutting was also present for the meeting and arrived around 0920 hours. Upon introducing myself to the three individuals I informed them that I was required to record interviews and asked if they minded me recording our conversations. Chris spoke with both Eric and Alex




# New Hampshire Liquor Commission
# Division of Enforcement & Licensing

before Eric stated that they didn't want the interview recorded. It's also worth noting the area we were sitting in was a private employee office not open to the public. I then informed them that I was going to explain all aspects of the complaints against the establishment and when Sgt. Cutting arrived he would have print outs of some of the complaints for them to review. All parties were very respectful throughout our conversation and were open to all advice and recommendations that the Division had for their establishment. I first explained that we received the initial complaint regarding their establishment from the Jackson Police Chief they knew to be:

### Christopher Perley

As I made this statement they all nodded their head and explained that they weren't surprised the Chief made the complaint due to his behavior on the day in question and several events that had transpired since. Chris explained that since this incident several state agencies had received anonymous complaints including the Tramway Service causing hassles for the establishment. Chris requested a 91-A and the Police Department wasn't releasing any records to them. This caused them to believe the anonymous complaints were fictitious. We then discussed that all of the Calls for Service that Chief Perley forwarded us which included parking complaints, an impaired patron in the parking lot, possible shots fired, and intoxicated patrons. I informed them that the calls that concerned me were all but the parking complaints as they were off premise. Eric explained that the Town of Jackson and Chief Perley weren't happy that he offered to pay parking tickets for customers who parked on the road during the event and the Chief refused to provide Eric with the names of the people who were given tickets. Eric then attempted to hand a blank check to the Police Department and they refused to take it, this situation made national news. I asked why they suspected a shots fired call came in and Alex explained that an adjacent cow farm owner was upset that they were setting off fireworks so prior to the fireworks the farm owner shot a gun into the air. Staff didn't see this occur but knew for certain no altercations or firearms were discharged on the property of the mountain that evening.

We then spoke about the size of the gathering as Chief Perley explained his frustration with the event was partially due to Eric not notifying him of ticket numbers so he had minimal Officer's on. Eric contradicted this statement telling me that he met with the Chief in advance and requested detail Officer's and to pay them. Chief Perley informed him that Officer's would be assigned to the area but then no Officers actually worked at the mountain for the event. Around this time Sgt. Cutting arrived and I moved on to discuss pictures I observed of patrons drinking alcohol on the ski lifts which upon further review, Alex confirmed the alcohol in the pictures wasn't sold by them. We agreed that they needed to be more aware and cautious of patrons drinking outside of approved areas of service and consuming their own alcohol.




# New Hampshire Liquor Commission
# Division of Enforcement & Licensing

I then told them about a photo of a couple who looked to have just gotten married going up a ski lift with a bottle of champagne. Eric zoomed in on the photo and showed me that the champagne bottle was actually sealed. We then discussed a report of marijuana usage on the mountain which came from a complaint from local building inspector:

**Kevin Bennett**



Kevin reported that patrons were urinating at the mid station lodge as there were no bathrooms as well. Kevin also reported patrons being given free champagne. I asked Alex about this complaint previously over the phone but again asked him if any of this was true. He confirmed that there were no bathrooms at the mid way station but that he didn't observe anyone urinating in public and that he was constantly in the area. He told me that he smelled marijuana while doing his rounds but never located anyone smoking. Eric informed me that no free alcohol was given away and showed us approximately 40 boxes of unsold champagne in the office area. He suspected people were smoking on the chair lift which traveled directly over the mid way station. We all agreed that for an event this size they needed some kind of bathroom facility at the mid way station due to the amount of patrons. They were exploring ideas to finalize a bathroom as they already had a septic system installed. Installing a well would be very difficult due to the steepness of the mountain as they would need a drill rig to navigate the mountain.

I explained that a concern I had was how they extended their area of service at the mid way station for this event without requesting an extension of service. Alex admitted they should have requested an extension. Through looking at photos from the event they did rope the area to make it clearly defined however, they never made an official request to the Division. I explained to them that since I did my original inspection at the mountain the year prior, they never submitted all required paperwork to the Division so the mid way station wasn't technically an improved area to start with. I then explained exactly what steps they needed to take to get in compliance regarding their areas of service. They were all very open to getting on the same page and working together to get into compliance for the upcoming season.

I then brought up the complaint of several intoxicated patrons in the base lodge. I informed them that Chief Perley forwarded me an after action report which stated that the Police Department was called to remove several intoxicated patrons from the bar who were refusing to leave. Alex confirmed that they did call the Police as they didn't want the situation to escalate. He was present for the situation and stated the Chief Perley wasn't present for this

 

# New Hampshire Liquor Commission
# Division of Enforcement & Licensing

call. Sgt. Cutting explained that requesting Police assistance during a situation like this could be viewed as a mitigating factor. Alex explained that an intoxicated patron was in the lodge about an hour prior to the call and the patron was asked to leave the building as he was intoxicated. The male was never served alcohol at either bar and none of the staff knew the man. The man then returned to the bar and become verbally aggressive with one of Alex's female bartenders. Due to the situation escalating Alex requested Police to remove the male, I told Alex he did the right thing to report the incident. I asked Alex how many patrons were involved in the incident and he stated one. He stated "several" patrons weren't removed from the bar, it was one person. I informed them that the Police Officers released the man into the parking lot and never identified him. Without having Body Worn Camera's, interior video footage, and no information of who the individuals were, I was unable to speak with the patron or collect any information that the patron was served any alcohol at the mountain. Chris asked me if it was common for a Police Department to report an incident like this to the Division and I told him it was. I explained that we received reports regularly from Police Departments regarding liquor law violations.


As the meeting was concluding Chris asked how long it would be before they could have our completed report as they were taking some kind of administrative action against the town in Superior Court. I told Chris I was hopeful to complete the report within a week, then it just needed to be approved before it could be released. Chris, Eric, and Alex thanked us for being transparent regarding all aspects and concerns of this investigation and said they looked forward to working closely together for the upcoming ski season. We then concluded the meeting.